USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__01/19/18___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
                                  :

SHARON KAO, et al.,                       :

                          Plaintiffs,   :

                                    :           17 Civ. 0232 (LGS)

              -against-              :

                                    :        **OPINION AND ORDER**

BRITISH AIRWAYS, PLC, et al.,       :

                        Defendants. :

------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

      Plaintiffs Sharon Kao and Brendan Mahoney bring this action against Defendants British Airways ("BA") and OpenSkies Sasu ("OS"), based on their barring Plaintiff Kao from bringing her service dogs on a transatlantic flight. (The two movants are referred to herein as the "Defendants," despite numerous unnamed persons and entities being named as defendants.) Plaintiffs allege discrimination based on disability in violation of the Americans with Disability Act of 1990, 42 U.S.C. § 12101 et seq. (the "ADA"), 42 U.S.C. § 1983, the New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.* (the "NYSHRL") and the New York City Human Rights Law, N.Y. Admin. Code § 8-107 *et seq.* (the "NYCHRL"), as well as various common law torts. Defendants move to dismiss the First Amended Complaint (the "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion is granted.

## I.    BACKGROUND

      The following facts are taken from the Complaint and accepted as true for the purposes of this motion. *See Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016).

BA is one of the largest airline carriers in the United Kingdom, and OS is a transatlantic airline. BA owns and operates OS. On July 26, 2015, Plaintiffs departed Barcelona and arrived at Paris Orly Airport, intending to travel to Newark on an OS flight.

Shortly after arriving in Paris, Plaintiffs received an email alert that the OS flight from Paris to Newark had been delayed. Plaintiffs went to an OS counter to speak to a representative about the delay. During this inquiry, Kao sought permission to board the plane with her two dogs. Kao presented a letter from her physician, who stated that Kao has a "disability [which] produces symptoms of deep anxiety and panic disorder, especially while traveling," and that Kao's "ability to fly with her dogs is crucial to [her] health." A supervisor at the counter, employed by one or both Defendants, refused to allow Kao to board the flight with the dogs without documentation from a veterinarian certifying that the animals are service dogs. The supervisor screamed at Kao and demanded that she disclose her medical condition in public. Kao fell to the ground in a faint and was attended by paramedics while the supervisor continued to harass her. Kao received and paid for medical services at the airport infirmary. As a result of this incident, Kao experienced, and continues to experience, anxiety and panic disorder.

## II.    STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[] … claims across the line from conceivable

to plausible." *Twombly,* 550 U.S. at 570. "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly,* 550 U.S. at 545). On a Rule 12(b)(6) motion, "all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 59 (2d Cir. 2016).

## III.  DISCUSSION

Plaintiffs assert two federal claims. Count One is an ADA claim against Defendants for permitting the supervisor, an employee of one or both Defendants, to discriminate against Kao for her disability. Count Four is a § 1983 claim against Defendants based on the same conduct. Both counts are dismissed because, while the Montreal Convention does not pre-empt Plaintiffs' federal and state claims, the ADA does not apply to Plaintiffs' claim, and Plaintiffs' § 1983 claim is abandoned. Because the federal claims are dismissed, the Court declines to exercise supplemental jurisdiction over the remaining state and city law claims.

### A.    The Montreal Convention

Defendants argue that all of Plaintiffs' claims should be dismissed as pre-empted by the so-called Montreal Convention (the "Convention"). *See* Convention for International Carriage by Air, May 28, 1999, S. Treaty Doc. No. 106-45 (2000), 1999 WL 33292734 (1999). The argument is rejected because it does not apply.

The Convention modernizes the Warsaw Convention without amending it. *Ehrlich v. Am. Airlines, Inc.*, 360 F.3d 366, 371 n.4 (2d Cir. 2004); *accord Lee v. Air Can.*, 228 F. Supp. 3d 302, 306 (S.D.N.Y. 2017) ("Toward the end of the twentieth century, the state parties to the Warsaw Convention negotiated a treaty--the Montreal Convention--to replace the Warsaw

Convention and its associated hodgepodge of supplementary amendments and intercarrier agreements.") (internal citation and quotation marks omitted). Accordingly, the construction of the Warsaw Convention remains relevant in interpreting the Montreal Convention. *El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 174-75 (1999) ("The Supreme Court . . . [held] that the language of [the Montreal Convention] embodied the intent of the drafters of [the Warsaw Convention], and so could be used to interpret the original Article 24."); *see King v. American Airlines, Inc.*, 284 F.3d 352, 357-58 (2d Cir. 2002) (finding that the Montreal Convention clarifies but does not change the Warsaw Convention); *accord Maranga v. Abdulmutallab*, 903 F. Supp. 2d 270, 272 (S.D.N.Y. 2012).

The Convention exclusively governs the rights of passengers injured on international carriage. *See Sanches-Naek, v. TAP Portugal, Inc.*, 260 F. Supp. 3d 185, 196 (D. Conn. 2017) ("Because the Warsaw Convention and Montreal Convention create a 'comprehensive liability system' that is the 'exclusive mechanism for remedying injuries' that are covered by the substantive scope of the two Conventions, they preclude any claims that arise from events covered by the Conventions' substantive scope but that are not brought under the Conventions.") (internal citation omitted). If the Convention applies to Plaintiffs' injuries, then the Convention pre-empts all of their federal and state claims. *See Carpenter v. Republic of Chile*, 610 F.3d 776, 781 (2d Cir. 2010); *Mateo v. JetBlue Airways Corp.*, 847 F. Supp. 2d 383, 387 (E.D.N.Y. 2012) ("Other courts, including several in this circuit, have also concluded that the Montreal and Warsaw Conventions completely preempt state law claims.") (collecting cases); *see also Tseng*, 525 U.S. at 174-75 (same regarding the Warsaw Convention).

The Convention applies to "international carriage by air" and creates liability for "damage sustained in case of . . . bodily injury of a passenger [provided that] the accident which

caused the . . . injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking." Montreal Convention, art. 1, § 1; art. 17, § 1; *see Ojide v. Air France,* No. 17 Civ. 3224, 2017 WL 4402569, at *2 (S.D.N.Y. Oct. 2, 2017). The parties do not dispute that the supervisor's conduct was an "accident," nor that Plaintiffs were engaged in "international carriage" within the meaning of the Convention. The issue is whether the supervisor's conduct occurred during "the operation of embarking."

Whether an accident took place in "the operation of embarking" depends on the following four factors: "(1) the activity of the passengers at the time of the accident; (2) the restrictions, if any, on their movements; (3) the imminence of actual boarding; [and] (4) the physical proximity of the passengers to the gate." *King*, 284 F.3d at 359; *accord Sanches-Naek*, 260 F. Supp. 3d at 193. The analysis is flexible and highly fact dependent. *King*, 284 F.3d at 359.

In *Buonocore v. Trans World Airlines, Inc.*, the Second Circuit concluded that the accident did not occur in the course of embarking because the accident occurred "some distance away from the counter toward a mobile snack cart" and "in the public area of the airport," two hours before the flight departure and prior to going through immigration control or security inspections. 900 F.2d 8, 9 (2d Cir. 1990); *accord Walsh v. Koninklijke Luchtvaart Maatschappij N.V.*, No. 09 Civ. 01803, 2011 WL 4344158, at *2 (S.D.N.Y. Sept. 12, 2011) ("[W]here passengers have arrived early for their flight, checked-in, and received a boarding pass, but have not gone through the initial security check, the passenger's location, the lack of restriction of movement, and the remoteness in time from actual boarding [does] not indicate embarkation.").

In contrast, in *Day v. Trans World Airlines, Inc.*, the Second Circuit concluded that the accident occurred during the course of embarking because the plaintiff was in a line, deviation

from which risked missing the flight, immediately before the gate, within minutes of boarding the flight. 528 F.2d 31, 32 (2d Cir. 1975); *accord King*, 284 F.3d at 359–60 (finding that the plaintiffs were in the process of embarking because they "had already checked in for their flight, received their boarding passes, and boarded the vehicle that was to transport them from the terminal to the aircraft."); *Walsh*, 2011 WL 4344158, at *3 (finding that a passenger who was seated at a departure gate and stood up to join a group of passengers assembled near the gate after boarding instructions was "embarking" for purposes of the Montreal Convention).

Plaintiffs here were at the counter to inquire about their flight delay, five hours prior to flight time, prior to immigration control or security inspection. Plaintiffs "had ample time to roam freely about the terminal before [their] flight was called" and were "nowhere near the gate." *Buonocore*, 900 F.2d at 10. The mere fact that Plaintiffs had presented their luggage and received a boarding pass during their inquiry does not compel a conclusion that the confrontation occurred during embarkation. *See id.*, 900 F.2d at 9-10 (concluding that the accident did not occur during embarkation even though the plaintiffs had already checked in and received their boarding passes). In sum, all four factors weigh against finding that the incident took place during embarkation. *See, e.g., Ginsberg v. American Airlines*, No. 09 Civ. 3225, 2010 WL 3958843, at *5 (S.D.N.Y. Sept. 27, 2010) (finding that because "there was no possibility of [the plaintiff] successfully checking in or boarding the return flight," the plaintiff was not "embarking" under the meaning of the Montreal Convention).

Defendants' reliance on *Singh v. North American Airlines* is unpersuasive. 426 F. Supp. 2d 38 (E.D.N.Y. 2006). *Singh* presented "an unusual situation," where the court struggled to determine when the accident took place, as the accident could have occurred either when the plaintiff's bags were mislabeled at the counter or when the plaintiff was detained. *Id.* at 46. In

contrast, here, the supervisor's conduct that caused Kao's injuries occurred exclusively at Defendants' counter. Further, in *Singh*, in determining whether the accident occurred during embarkation, the court emphasized the location of the accident without evaluating the remaining three factors, "(1) the activity of the passengers at the time of the accident; (2) the restrictions, if any, on their movements; [and] (3) the imminence of actual boarding," per Second Circuit jurisprudence. *King*, 284 F.3d at 359; *accord Sanches-Naek*, 260 F. Supp. at 193.

As explained above, the Convention does not pre-empt Plaintiffs' federal and state claims because the accident giving rise to Plaintiffs' injuries did not occur during embarkation.

### B. The ADA Claim

Defendants' motion to dismiss the ADA claim is granted because the Complaint fails to allege that Defendants are subject to the ADA. To state a claim under the ADA, a plaintiff must plausibly allege "that the defendant is subject to the ADA," among other things. *Dean v. Univ. of Buffalo Sch. at Med. and Biomedical Scis.*, 804 F.3d 178, 187 (2d Cir. 2015). Under Title III, the ADA prohibits "any person who owns, leases . . . , or operates a place of public accommodation" from discriminating based on disability in "any place of public accommodation." 42 U.S.C. § 12182(a); *see Krist v. Kolombos Rest., Inc.*, 688 F.3d 89, 94 (2d Cir. 2012). The ADA enumerates twelve categories of "private entities" that are "considered public accommodations." 42 U.S.C. § 12181(7)(A)–(L); *Lopez v. Jet Blue Airways*, 662 F.3d 593, 599 (2d Cir. 2011). The only category that is relevant to the Complaint is "a terminal, depot, or other station used for specified public transportation." 42 U.S.C. § 12181(7)(G); *Lopez*, 662 F.3d at 599.

"[A] terminal, depot, or other station" is a "public accommodation" under Title III when is used for "specified public transportation" as defined by § 12181(10). 42 U.S.C. §

12181(7)(G); *Lopez*, 662 F.3d at 599. The ADA defines "specified public transportation" as "transportation by bus, rail, or any other conveyance (*other than by aircraft*) that provides the general public with general or special service." 42 U.S.C. § 12181(10) (emphasis added); *Lopez*, 662 F.3d at 599. Therefore, an entity that operates "a terminal, depot, or other station" that is primarily used for transportation by aircraft is not subject to the ADA. *Lopez*, 662 F.3d at 599; *accord Morgan v. Virgin Atlantic Airways*, No. 14 Civ. 819, 2015 WL 7283182, at *3 (N.D.N.Y. Nov. 17, 2015).

The Complaint fails to allege facts sufficient to show that Defendants operate a "place of public accommodation" within the meaning of the ADA. The Complaint alleges that the supervisor at a counter discriminated against Kao by refusing to allow her to board with her dogs. This counter was located inside the airport but OS and/or BA operated it to facilitate passengers' inquiries about their flight schedule and to process their check-in, including making decisions about whether animals may board the flight. The Complaint alleges no other use for this counter. Because the counter was "used primarily for air transportation," this counter is not a "public accommodation" for the purposes of Title III of the ADA. *Lopez*, 662 F.3d at 599.

In their opposition to Defendants' motion to dismiss, Plaintiffs assert in substance that the counter is a "public accommodation" under Title III because it was in "the terminal in front of a crowd of people" and not subject to Defendants' control. However, the key issue is whether the "terminal, depot, or other station" is "primarily devoted to airtravel," *id.*; *accord Morgan*, 2015 WL 7283182, at *3, not whether it is located in a public space or under Defendants' control. The fact that the counter is located in public does not preclude a finding that the counter is used primarily for air travel. *See Lopez*, 662 F.3d at 599 (concluding that the terminal is not a "public

accommodation" under Title III even though it was located inside an airport and in front of a crowd of people).  The ADA claim is dismissed.

### C. The § 1983 Claim

Defendants' motion to dismiss Plaintiffs' § 1983 claim is granted as abandoned.  To state a claim under § 1983, a plaintiff must allege that "the defendant was a state actor, i.e. acting under color of state law, when he committed the violation," among other things.  *Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015).  In their opposition to Defendants' motion to dismiss, Plaintiffs do not address Defendants' argument that the Complaint lacks any allegation that Defendants acted under color of state law.  Plaintiffs' failure to oppose Defendants' specific argument in a motion to dismiss is deemed waiver of that issue.  *See e.g.*, *Arista Records, LLC v. Tkach*, 122 F. Supp. 3d 32, 38–39 (S.D.N.Y. 2015) (finding that when a party fails to oppose specific arguments, then the party waives those issues).  Even if the claim were not abandoned, it would fail on the merits for failure to allege state action.  *See Sanches-Naek,* 260 F.Supp.3d at 191–92 n.1 (stating that a privately owned airline is not a state actor for purposes of §1983).

### D. NYSHRL, NYCHRL and Other State Law Claims

Plaintiff's remaining claims arise under state and city law.  A district court may decline to exercise supplemental jurisdiction over the claims arising under state and city law if the court "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  In considering whether to exercise jurisdiction, courts must consider "judicial economy, convenience, fairness, and comity."  *Kroshnyi v. U.S. Pack Courier Servs. Inc.*, 771 F.3d 93, 102 (2d Cir. 2014).  These factors will usually lead to dismissal of the non-federal claims when the federal claims have been dismissed at a relatively early stage.  *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006).  Here, both federal claims against

Defendants are dismissed on Defendants' Rule 12(b)(6) motion, and no discovery has taken

place. The Court therefore declines to exercise supplemental jurisdiction over Plaintiff's

NYSHRL and NYCHRL and dismisses them without prejudice to refiling in state court.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. The Clerk of

Court is respectfully directed to close the motion at Docket Number 19 and close the case.

Dated: January 19, 2018
        New York, New York


_____
        **LORNA G. SCHOFIELD**
    **UNITED STATES DISTRICT JUDGE**